AO 442 (Rev. 11/11) Arrest Warrant

AUSA Devlin N. Su (312) 886-0666

**FILED**

MAR 22 2019

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
                    DEPUTY CLERK

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

UNITED STATES OF AMERICA

v.

GERMAN VALENCIA

**WARRANT FOR ARREST**

CASE NUMBER: 1:19-mj-00062-BAM

19 CR 272

MAGISTRATE JUDGE CUMMINGS

To:    The United States Marshal and Any Authorized Officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay (name of person to be arrested) GERMAN VALENCIA,
who is accused of an offense or violation based on the following document filed with the court:

☒ Complaint

This offense is briefly described as follows:

conspiracy to commit money laundering

in violation of Title 18, United States Code, Section 1956(h)

Date: <u>March 22, 2019</u>

City and state: <u>Chicago, Illinois</u>

_Issuing Officer's signature_

<u>JEFFREY CUMMINGS, U.S. MAGISTRATE JUDGE</u>
_Printed name and title_

Bail fixed at $_____ by    _____
                                              _Name of Judicial Officer_

| **Return** |
|---|
| This warrant was received on *(date)* _____, and the person was arrested on *(date)* _____ |
| at *(city and state)* _____. |
| Date: _____        _____<br>_Arresting officer's signature_ |
|        _____<br>_Printed name and title_ |

INTAKE

AO 91 (Rev. MAR 22 2019 Complaint

AUSA Devlin N. Su (312) 886-0667

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

# 19 CR 272

UNITED STATES OF AMERICA

v.

GERMAN VALENCIA

CASE NUMBER:

# RECEIVED

MAR 2 2 2019

MAGISTRATE JUDGE
JEFFREY I. CUMMINGS

## CRIMINAL COMPLAINT

## MAGISTRATE JUDGE CUMMINGS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

Beginning no later than March 18, 2017, and continuing until June 7, 2017, in the Northern District of Illinois, Eastern Division, and elsewhere, GERMAN VALENCIA, defendant herein, did conspire with INDIVIDUAL A, and with others known and unknown, to conduct a financial transaction affecting interstate commerce, which transaction involved the proceeds of a specified unlawful activity, namely, the felonious buying and selling and otherwise dealing in a controlled substance, knowing that the transaction is designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of the specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); in violation of Title 18, United States Code, Section 1956(h).

This criminal complaint is based upon these facts:

X  Continued on the attached sheet.

BRANDON K. RODEKOHR
Special Agent, Drug Enforcement Administration
(DEA)

Sworn to before me and signed in my presence.

Date: March 22, 2019

Judge's signature

City and state: Chicago, Illinois

JEFFREY CUMMINGS, U.S. Magistrate Judge
Printed name and Title

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

ss

### **AFFIDAVIT**

I, BRANDON K. RODEKOHR, being duly sworn, state as follows:

## I.   **PRELIMINARY MATTERS**

1.    I am a Special Agent with the Drug Enforcement Administration. I have been so employed since approximately September 2014.

2.    As part of my duties as a DEA Special Agent, I investigate criminal violations relating to narcotics trafficking offenses, including criminal violations of the federal controlled substance laws, including, but not limited to Title 18, United States Code, Sections 1956, and 1957, and Title 21, United States Code, Sections 841, 843, 848, 952 and 963. I have been involved with various electronic surveillance methods, the debriefing of defendants, informants, and witnesses, as well as others who have knowledge of the distribution, transportation, storage and importation of controlled substances.

3.    I have received training in the area of narcotics investigations, money laundering, financial investigations and various methods that drug dealers use in an effort to conceal and launder the proceeds of their illicit drug trafficking enterprises. I have participated in numerous investigations involving violations of narcotics laws.

4.    I have participated in investigations that have led to the issuance of search warrants involving violations of narcotics laws. These warrants involved the search of locations including: residences of targets, their associates and relatives,

1

"stash houses" (houses used as drug/money storage locations), storage facilities, bank safe deposit boxes, cellular/camera phones, and computers. Evidence searched for and recovered in these locations has included controlled substances, records pertaining to the expenditures and profits realized there from, monetary instruments and various assets that were purchased with the proceeds of the drug trafficking. I have participated in the execution of multiple federal search warrants.

5.      This affidavit is submitted in support of a criminal complaint alleging that GERMAN VALENCIA violated Title 18, United States Code, Section 1956(h) by conspiring with INDIVIDUAL A, and with others known and unknown, to conduct a financial transaction affecting interstate commerce, which transaction involved the proceeds of a specified unlawful activity, namely, the felonious buying and selling and otherwise dealing in a controlled substance, knowing that the transaction is designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of the specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); in violation of Title 18, United States Code, Section 1956(h) (the "**Subject Offense**").

6.      Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging VALENCIA with committing the **Subject Offense**, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendant committed the offense alleged in the complaint.

7.    The statements in this affidavit are based on my personal knowledge and information provided to me by other law enforcement agents, as well as on law enforcement surveillance, witness interviews, records obtained from financial institutions, and court-authorized interceptions of wire and electronic communications.

8.    In summary, as described in this affidavit, VALENCIA, a suspected marijuana supplier in California, conspired with a Chicago-area narcotics associate, INDIVIDUAL A, to launder marijuana proceeds via cash deposits into nominee bank accounts. Specifically, court-authorized interceptions of wire and electronic communications over a telephone used by VALENCIA indicated that VALENCIA instructed INDIVIDUAL A to deposit cash narcotics proceeds into designated nominee bank accounts; according to bank records, INDIVIDUAL A made those deposits in Chicago, which were then promptly withdrawn in California by third parties and presumably destined for VALENCIA.

## II.    FACTS ESTABLISHING PROBABLE CAUSE

### Introduction

9.    Beginning in March 2017, and continuing until June 2017, law enforcement conducted court-authorized interceptions of wire and electronic communications over (773) 934-9003 ("Target Phone 3"), used by INDIVIDUAL A,[1] and 209-216-9772, believed to be used by VALENCIA as described below in paragraph

---

[1] After speaking to INDIVIDUAL A in person, law enforcement has identified the voice of the user of Target Phone 3 as belonging to INDIVIDUAL A.

50 and its subparagraphs ("Valencia Phone 1").[2] These interceptions, and corresponding bank records, indicate that VALENCIA and INDIVIDUAL A conspired to launder narcotics proceeds.

### *Laundering of $4,000 of Narcotics Proceeds on April 20, 2017*

10.     For example, on or about March 18, 2017, at approximately 6:25 p.m., VALENCIA, who was using Valencia Phone 1, had a conversation with INDIVIDUAL A, who was using Target Phone 3. In the conversation, they discussed a recent load of marijuana that VALENCIA had just sent INDIVIDUAL A[3]:

| | |
|---|---|
| VALENCIA: | Either way, if he can't take it out you can take it [marijuana][4] out, right? |
| INDIVIDUAL A: | Mm-hum. |
| VALENCIA: | But I sent it all the same. Do you know what I mean? |

*      *      *

---

[2] On or about March 15, 2017, the United States District Court for the Northern District of Illinois entered an Order authorizing the interception of wire communications occurring to and from Target Phone 3. On or about April 17, 2017, and again on or about May 16, 2017, the United States District Court for the Northern District of Illinois entered an order authorizing the interception of wire and electronic communications over Target Phone 3 and Valencia Phone 1.

[3] Throughout this affidavit, I describe conversations that were intercepted pursuant to court orders. The description includes my understanding of what is being said during the conversations in brackets or otherwise. This understanding and interpretation of the conversations is based on (i) the content and context of the conversations, (ii) my experience and my fellow agents' experiences as law enforcement officers, including our experience observing written conversations as a whole, and (iii) the investigation to date. The summaries of the intercepted conversations set forth in this affidavit is based on draft—not final—transcriptions completed by a Spanish-speaking law enforcement officer or monitor. Finally, the summaries contained herein do not include all potentially criminal communications intercepted, or all topics covered during the course of the intercepted conversations.

[4] As discussed below, law enforcement intercepted other communications in which they discuss the quality and type of the narcotics using terms typically associated with marijuana, such as "seeds."

VALENCIA:     In the back by the passenger side light... Remove it and in a hole there's a key wrapped in tape.

INDIVIDUAL A:     Alright.

VALENCIA:     Look, like I told you, whatever doesn't have tape is for Ruben [discussing how VALENCIA divided the load of marijuana up between INDIVIDUAL A and Ruben]. The one that just has one turn covering the back/underside... You have one that is different from my nephew's... The one I told you about, that your brother in law was talking about. You know what I mean? So that you can look at it...

INDIVIDUAL A:     Alright.

VALENCIA:     But all of them are the same. I split them [the marijuana] up equally for everyone.

                            *        *        *

VALENCIA:     So, what only has one turn going around it, is for you [describing appearance of packaging for the marijuana belonging to INDIVIDUAL A].

INDIVIDUAL A:     Okay.

VALENCIA:     And leave the rest there for him so that Ruben can deliver it.

INDIVIDUAL A:     The one that only has one turn with the tape is the one you're referring to?

VALENCIA:     Uh-huh. Yes. The long way. It's like an 'o.' I made the one for him in a cross shape, the one for my nephew... So that you can explain it to Ruben.

INDIVIDUAL A:     I understand now. Yes, one is in a cross... The one that is not in a cross shape is mine.

VALENCIA:     Yeah. The one that just has a [the tape] going around is yours. The other one has a one going around but another one going the other way.

INDIVIDUAL A:     [u/i] and I leave the rest there.

VALENCIA: Yes, leave it there and you can deliver it to... Or you can leave it in the tow truck for that guy... Or you can send it to him tomorrow, or I don't know...

11. On or about March 19, 2017, at approximately 7:36 p.m., VALENCIA, who was using Valencia Phone 1, had a conversation with INDIVIDUAL A, who was using Target Phone 3. In the conversation, INDIVIDUAL A and VALENCIA discussed their plans to work hard and sell the marijuana:

INDIVIDUAL A: Yeah, the point is to get out of the popsicle and...

VALENCIA: Exactly.

INDIVIDUAL A: Do the rounds [sell drugs].

VALENCIA: Yeah, and do the rounds, so that there is something left over for me [make money for VALENCIA]. Like right now, I'm behind because of that other little thing, there isn't a lot of profit on that. I want you and him to give it your best shot [best effort at selling drugs]. Because his cousin's client appeared and I told him, "Okay, I'll place evenly for everyone." I told him right now, "If you don't know how to situate them for whatever reason, the other guy can jump in and help," he said, "I am in 100 percent."

INDIVIDUAL A: [chuckles] Uh-huh.

VALENCIA: That's how I want it. Alright, so then tomorrow you can plan things out.

INDIVIDUAL A: Your nephew and I already talked and we already put a plan in place.

VALENCIA: If you find one that you like or whatever and he doesn't take it have him take it to you or either way...

INDIVIDUAL A: Yeah, he just needs to let me know. Uh-huh.

VALENCIA: Exactly. Talk to him in person when he goes over there. And tell him, "if anything... If you can't do this."

INDIVIDUAL A: From my end I'm willing to work hard [at selling drugs].

| VALENCIA: | And for the next time, so that you have something more left over for you [more profit for INDIVIDUAL A], I am going to give you something at the price from over here [provide marijuana to INDIVIDUAL A at a lower price]. |
|---|---|
| INDIVIDUAL A: | That's awesome. |
| VALENCIA: | So that you can give it your best shot and you have a little bit left over for you and you can give me what is mine [drug proceeds for VALENCIA] the soonest possible as well. I also told my nephew that, "I can put for you in 2 or 3, depending on what can fit, I can take care of both of you." He said, "That's fine." |

12.     On or about March 21, 2017, at approximately 1:25 p.m., VALENCIA, who was using Valencia Phone 1, had a conversation with INDIVIDUAL A, who was using Target Phone 3. During the conversation, they discussed laundering the proceeds by making cash deposits into designated nominee bank accounts to avoid law enforcement scrutiny:

| INDIVIDUAL A: | I was going to ask you. I have there about 3 - 3.5 [$3000-3500]. But I don't know if you want to wait until tomorrow and see if I can double that. So we can put something more substantial, or if you need it right now I'll provide them [drug proceeds]. |
|---|---|
| VALENCIA: | I didn't want... At the number you had provided me with/sent me, I didn't want you to put too much in it [don't deposit too much money to avoid attracting law enforcement attention]. That's the thing. |
| INDIVIDUAL A: | Oh. Sure. |
| VALENCIA: | Instead I could send you an eagle one [Bank of America account number] tomorrow too and then you can put no more than 3 [$3000]. It [the account] belongs to another buddy of mine. |
| INDIVIDUAL A: | Uh-huh. Okay. You tell me how to do it and I'll do it that way. It's no problem. |

VALENCIA: On that one I didn't want... It's just that it's a niece of mine and... We had put in many times [made too many deposits of drug proceeds], now we haven't for about a month, but anyway they ask her stupid questions over here sometimes [the bank gets suspicious about the deposits].

INDIVIDUAL A: Oh. Yeah, that's the way they are when it's done from here to there too [the bank sometimes asks INDIVIDUAL A what his deposits are for].

13.    On or about March 23, 2017, at approximately 8:44 p.m., VALENCIA, who was using Valencia Phone 1, had a conversation with INDIVIDUAL A, who was using Target Phone 3. In the conversation, they discussed a drug debt owed by INDIVIDUAL A to VALENCIA:

VALENCIA: Nothing. I just wanted to ask you about the old stuff [prior shipment of drugs sent to INDIVIDUAL A]. You do have everything written down there. Right?

INDIVIDUAL A: Yes, yes.

VALENCIA: Uh, like how much is pending/past due [how much is the drug debt owed by INDIVIDUAL A]?

INDIVIDUAL A: Uh, I would need to check when I get home right now if you want.

VALENCIA: Okay. Give me a call because I wanted to know and square away what I have written down. Right?

14.    On or about March 26, 2017, at approximately 9:06 p.m., VALENCIA, who was using Valencia Phone 1, had a conversation with INVIDIDUAL A, who was using Target Phone 3. In the conversation, they discussed INDIVIDUAL A's ongoing marijuana sales on behalf of VALENCIA:

INDIVIDUAL A: They [INDIVIDUAL A's marijuana customers] aren't really into it because it has those little balls [describing appearance and quality of the marijuana].

VALENCIA:     Oh, they have those seeds [describing appearance and quality of the marijuana], right?

INDIVIDUAL A:     Uh-huh. And because of that, those guys really don't want anything to do with it [INDIVIDUAL A's marijuana customers don't like it].

VALENCIA:     Well, if you want, go ahead and modify the price so that you can get rid of them. So that you don't have them there. Offer it to them cheaper, for them… at least at 1-8 [price of marijuana]. And I can lower it for you 2-3 [price of marijuana], so that you can make something [a drug profit].

INDIVIDUAL A:     Okay, I am going to let my friend know and see… that first one that I cut a little bit on, the little heads came out right away [describing marijuana appearance] and I was like, "Oh, no." and uh… do you remember the purple one?

VALENCIA:     Uh-huh.

INDIVIDUAL A:     Yeah, it's a little bit more, but… The other one…

VALENCIA:     How many of those did you end up getting? Three?

INDIVIDUAL A:     I think so.

VALENCIA:     Because there were 5 and I gave the other guy two, but either way they are going to be there. I divvied it up, unless I got mixed up a little.

INDIVIDUAL A:     I think it's four.

VALENCIA:     Oh, then I made a mistake. Then one of the monkey ones went over there. The thing is that it had to.. I do think so.

INDIVIDUAL A:     Yes, it's four of those.

VALENCIA:     Oh, okay. Then I got mixed up a bit. But it's fine like that, right?

INDIVIDUAL A:     Yes, that one's fine, they're pushing it along. But it's the other one that really isn't sticking, the ones that sprouted the little heads [describing appearance of marijuana]. But the one they do want is the monkey kind [a type of marijuana].

15.    On or about March 27, 2017, at approximately 1:26 p.m., VALENCIA, who was using Valencia Phone 1, had a conversation with INDIVIDUAL A, who was using Target Phone 3. In the conversation, INDIVIDUAL A asked for bank account information in which to deposit narcotics proceeds:

INDIVIDUAL A:    You know what? Send me a number [bank account number to receive a deposit], because I think I'll go pick up some tickets [drug proceeds] later and I think god willing I'll have a hand [$5000] or more.

VALENCIA:    All right, you got it. I'll give you a call later.

INDIVIDUAL A:    I think I'll send tomorrow the tickets [drug proceeds] that I pick up later.

VALENCIA:    All right, then. You got it.

16.    On or about April 19, 2017, at approximately 12:18 p.m., VALENCIA, who was using Valencia Phone 1, texted INDIVIDUAL A, who was using Target Phone 3, bank account information:

VALENCIA: [xx]8236 [Individual B] it's the eagle one [Bank of America].

17.    On or about April 20, 2017, at approximately 5:05 p.m., VALENCIA, who was using Valencia Phone 1, had a conversation with INDIVIDUAL A, who was using Target Phone 3. In the conversation, INDIVIDUAL A confirmed that he deposited $4,000 in narcotics proceeds:

INDIVIDUAL A:    4 ears [$4000], old man. It's ready [deposit is complete].

18.    According to records obtained from Bank of America, account number xx8236 (the account number that VALENCIA texted to INDIVIDUAL A) is held in the name of Individual B and Individual C at 17638 Anaconda Road, Madera, CA.

The statement for that account does indeed show a cash counter deposit in the amount of $4,000 on April 20, 2017, followed by a cash withdrawal of $4,000 in California on April 21, 2017. The deposit slip does not have a name on it, but the telephone number provided is Target Phone 3, used by INDIVIDUAL A. Surveillance video obtained from Bank of America further shows an individual positively identified as INDIVIDUAL A personally making the deposit at a Bank of America branch in Chicago on or about April 20, 2017.

19.     Based on law enforcement's collective training and experience, including knowledge of these and other interceptions and bank records, I believe that VALENCIA shipped INDIVIDUAL A marijuana to distribute in the Chicago area. VALENCIA then instructed INDIVIDUAL A to launder $4,000 in narcotics proceeds through the designated Bank of America account for withdrawal and delivery to VALENCIA in California. I further believe that based on the coded reference to the bank account (*i.e.*, "eagle one" as a reference to Bank of America), as well as the use of a nominee bank account that is not owned by VALENCIA, VALENCIA and INDIVIDUAL A intended to conceal the criminal nature of those proceeds.

### *Laundering of $5,000 of Narcotics Proceeds on April 27, 2017*

20.     On or about April 20, 2017, at approximately 8:00 p.m., VALENCIA, who was using Valencia Phone 1, had a conversation with INDIVIDUAL A, who was using Target Phone 3. In the conversation, INDIVIDUAL A provided VALENCIA with an update on his narcotics distribution:

INDIVIDUAL A:     And of the other kind... I'm going to check because I haven't gotten rid of any of mine other than the monkey ones [type

|  |  |
|---|---|
|  | of marijuana]. The monkey ones that were mine and I've been working on your nephew's stuff. |
| VALENCIA: | Oh, okay. Well, we sent some more monkey and of the big ones in there as well. |
| INDIVIDUAL A: | The monkey ones are all gone. They were the first ones to go. |
| VALENCIA: | Oh. |
| INDIVIDUAL A: | And [u/i]. |
| VALENCIA: | And the sky ones [type of marijuana] too. |
| INDIVIDUAL A: | There you go. Those are the ones they've been working with. |
| VALENCIA: | Yeah, because there was another 5 of sky in there. |

*    *    *

|  |  |
|---|---|
| INDIVIDUAL A: | That's what I was telling your brother when he asked me. Because he was asking me to tell him more or less. I was telling him more or less what I thought... And he told me that he's going to be getting some of the light ones and he was telling me more or less. He said, "You know what? I'm going to talk to this guy and about those diesel cars [type of marijuana]." |
| VALENCIA: | Mm-hum. |
| INDIVIDUAL A: | Of those OG, of the diesel [type of marijuana]. |
| VALENCIA: | Uh-huh, yeah. |
| INDIVIDUAL A: | I told him, "Oh, I'm familiar with it." he said, "You should see. Those are like a kick. Just like you said." |
| VALENCIA: | Yeah. |
| INDIVIDUAL A: | So I told him, "Let me work hard at it. All I want is to be done with this because we're taking too long [to sell marijuana]." |
| VALENCIA: | I know. |

12

INDIVIDUAL A:    I want to complete the rest as soon as possible. That's why I'm doing whatever possible.

VALENCIA:    That's fine. Give it your all.

21.    On or about April 24, 2017, at approximately 12:28 p.m., VALENCIA, who was using Valencia Phone 1, had a conversation with INDIVIDUAL A, who was using Target Phone 3. In the conversation, VALENCIA and INDIVIDUAL A discussed laundering additional narcotics proceeds through a bank account:

INDIVIDUAL A:    I have some [drug proceeds to deposit] there, but I want to get you a little more [money].

VALENCIA:    Ok.

INDIVIDUAL A:    I just wanted to ask you if you wanted to do the same as this last time or you'll send me another one [would VALENCIA like INDIVIDUAL A to deposit the money to the same account or to a different account]?

VALENCIA:    If you want, let me send you another one [details for a different bank account].

INDIVIDUAL A:    However you want. That's why I was asking you.

VALENCIA:    So we could let that one rest a little bit [don't deposit money into the first bank account in order to avoid attracting law enforcement scrutiny].

INDIVIDUAL A:    That's fine. Send it to me later and I think I'll give you a call tomorrow around noon to let you know how it's going.

22.    On or about April 19, 2017, at approximately 12:18 p.m., VALENCIA, who was using Valencia Phone 1, texted INDIVIDUAL A, who was using Target Phone 3, bank account information:

VALENCIA:    [xx]0963 [Individual D] the little horse [Wells Fargo].

23.    On or about April 25, 2017, at approximately 5:54 p.m., VALENCIA, who was using Valencia Phone 1, had a conversation with INDIVIDUAL A, who was

13

using Target Phone 3. In the conversation, VALENCIA requested an update on the

status of the deposit:

> VALENCIA:        Did you send the letter [deposit the proceeds]?
>
> INDIVIDUAL A:    I'll put it for you [deposit the money] early tomorrow. I'm
>                  waiting for other documents [waiting to collect more
>                  proceeds]. I'll be getting them in about an hour.

24.    On or about April 26, 2017, at approximately 4:15 p.m., VALENCIA,

who was using Valencia Phone 1, had a conversation with INDIVIDUAL A, who was

using Target Phone 3. In the conversation, INDIVIDUAL A informed VALENCIA that

he would be delayed in depositing the proceeds into the specified account:

> INDIVIDUAL A:    Look, dude, I haven't been able to leave [to deposit the
>                  proceeds] from here. Because I was about to leave and this
>                  man that rents to me...
>
> VALENCIA:        Ah-ha.
>
> INDIVIDUAL A:    He told me that uh, that he was coming right now. That he
>                  was going to take out some plywood. Some wooden sheets
>                  from the basement here.
>
> VALENCIA:        Ah-ha.
>
> INDIVIDUAL A:    And I'm waiting for him, and nothing, and nothing. He
>                  hasn't arrived. My wife even got back right now from
>                  picking up the kids. And I called him right now and he said,
>                  "I'll be there in ten minutes." and uh... But I already,
>                  already have six [$6000] for you... Uh, six [$6000], dude.
>
> VALENCIA:        Oh, okay.
>
> INDIVIDUAL A:    Ah-ha.
>
> VALENCIA:        No, well, that's fine.
>
> ∗        ∗        ∗
>
> VALENCIA:        But there's some here... I ran into a friend that has some
>                  OG [type of marijuana] that are more bad ass than other

|                | times. I could put just OG and monkey [types of marijuana] for you. |
|----------------|--------------------------------------------------------------------|

INDIVIDUAL A:    Alright. Yeah, no, we won't even get stuck with those [those types of marijuana would sell well], dude.

VALENCIA:    Okay. No, well, give it, give it a big effort to do as much as possible [sell as much as possible].

25.    On or about April 27, 2017, at approximately 10:42 a.m., VALENCIA, who was using Valencia Phone 1, had a conversation with INDIVIDUAL A, who was using Target Phone 3. In the conversation, INDIVIDUAL A confirmed that he deposited $5,000 in narcotics proceeds:

INDIVIDUAL A:    Good morning, buddy. It's done [deposit complete]. I sent the letter of 5 [deposited $5000]. But on Saturday I think I'll send you another 2 or 3 [$2000 or $3000] more.

VALENCIA:    Thank you.

26.    According to records obtained from Wells Fargo, checking account xx0963 is indeed held in the name of Individual D at 2684 Cherry Tree Drive, Madera, CA. Bank statements show that a $5000 cash deposit was indeed made on April 27, 2017. Statements further show that $3,000 were withdrawn the following day, and $1,400 were withdrawn on May 1, 2017. Both withdrawals occurred at a Wells Fargo bank branch in Madera, CA.

27.    Based on law enforcement's collective training and experience, including knowledge of these and other interceptions and bank records, I believe that VALENCIA instructed INDIVIDUAL A to launder $5,000 in narcotics proceeds through the designated Wells Fargo account for withdrawal and delivery to VALENCIA in California. I further believe that based on the coded reference to the

15

bank account (*i.e.*, "little horse" as a reference to Wells Fargo), VALENCIA's desire to "let that one rest a bit" in order to avoid law enforcement scrutiny into the bank account owned by Individuals B and C, as well as the use of a different nominee bank account that is not owned by VALENCIA, VALENCIA and Individual A intended to conceal the criminal nature of those proceeds.

### *Laundering of $4,000 of Narcotics Proceeds on May 2, 2017*

28.    On or about May 1, 2017, at approximately 8:45 a.m., VALENCIA, who was using Valencia Phone 1, had a conversation with INDIVIDUAL A, who was using Target Phone 3. In the conversation, VALENCIA told INDIVIDUAL A to deposit additional narcotics proceeds into a different bank account:

| | |
|---|---|
| INDIVIDUAL A: | Do you want me to mail you a letter to this last address [deposit proceeds to the same account as last time] or the prior one you told me [a different bank account]? |
| VALENCIA: | If you want... |
| INDIVIDUAL A: | I think I will do it [deposit the proceeds] today or early tomorrow. |
| VALENCIA: | Okay. |
| INDIVIDUAL A: | But I'm just waiting for some other documents to complete all the paperwork [waiting to receive some more proceeds]. |
| VALENCIA: | I'll send you one today, so it won't be to the same one [VALENCIA will send details for a different bank account], and so we let the other one rest [not use the same bank account as last time to avoid attracting law enforcement scrutiny] for at least a month. |
| INDIVIDUAL A: | Remember I told you I was going to put two hours [$2000] on Saturday and you told me to put it in a prior one you told me about. |
| VALENCIA: | Yeah, wait a bit. I'll look for another one instead. |

29.     On or about May 1, 2017, at approximately 2:44 p.m., VALENCIA, who was using Valencia Phone 1, had a conversation with INDIVIDUAL A, who was using Target Phone 3. In the conversation, VALENCIA provided INDIVIDUAL with new bank account information:

VALENCIA:        [xx]4700 German Valencia

INDIVIDUAL A:    Okay, buddy, I'll send it [deposit] tomorrow.

VALENCIA:        Thank you. It's the little horse [Wells Fargo].

30.     On or about May 2, 2017, at approximately 2:40 p.m., VALENCIA, who was using Valencia Phone 1, had a conversation with INDIVIDUAL A, who was using Target Phone 3. In the conversation, INDIVIDUAL A confirmed with VALENCIA that he had deposited the proceeds: "Check, they were 4 [INDIVIDUAL A deposited $4,000].

31.     On or about May 2, 2017, at approximately 5:57 p.m., VALENCIA, who was using Valencia Phone 1, had a conversation with INDIVIDUAL A; who was using Target Phone 3. In the conversation, INDIVIDUAL A confirmed that he had deposited $4,000 in proceeds, and told VALENCIA that he was out of marijuana:

INDIVIDUAL A:    Uh, I, I put the four receipts [deposited $4000] for you.

VALENCIA:        Okay, that's fine. Thank you, dude.

                    *        *        *

INDIVIDUAL A:    And uh... But yeah, uh, he tells me that it's the way he could help us. But... Right now, we're almost... Of the, of the pretty kind, we're about to be finished with it [INDIVIDUAL A is almost out of a type of marijuana].

VALENCIA:        Alright then, all set.

17

32.    According to Wells Fargo records, account xx4700 is indeed held in the name of German Valencia DBA Natural Health Products at 9151 Goodheart Avenue, Delhi, CA. Checking account records show that a $4,000 cash deposit was made on May 2, 2017, and a $4,000 cash withdrawal made on May 3, 2017. Wells Fargo bank branch surveillance video shows that an individual positively identified as INDIVIDUAL A's girlfriend[5] made the deposit at a branch in Evanston, Illinois, while an individual positively identified as GERMAN VALENCIA (from VALENCIA's driver's license photograph) withdrew the money at a branch in Turlock, California.

33.    Based on law enforcement's collective training and experience, including knowledge of these and other interceptions and bank records, I believe that VALENCIA instructed INDIVIDUAL A to launder $4,000 in narcotics proceeds through the designated Wells Fargo account for withdrawal and delivery to VALENCIA in California. I further believe that based on the coded reference to the bank account (*i.e.*, "little horse" as a reference to Wells Fargo), and VALENCIA's desire to again "let the other one rest" in order to avoid law enforcement scrutiny into the bank account owned by Individual D, VALENCIA and Individual A intended to conceal the criminal nature of those proceeds.

### *Laundering of $3,000 of Narcotics Proceeds on May 16, 2017*

34.    On or about May 8, 2017, at approximately 9:59 a.m., VALENCIA, who was using Valencia Phone 1, had a conversation with INDIVIDUAL A, who was using

---

[5] Based on law enforcement surveillance indicating that INDIVIDUAL A cohabits with this woman, and based on statements made by INDIVIDUAL A referring to her as his "girlfriend" or "wife," law enforcement believes that the two are in a romantic relationship.

Target Phone 3. In the conversation, INDIVIDUAL A provided a status update on his

marijuana sales:

| | |
|---|---|
| INDIVIDUAL A: | Good. I'm going to look into a receipt [deposit proceeds] later. |
| VALENCIA: | Ruben called to tell me he has some of the ones he got, the kind... The one called green crack [type of marijuana]. Can you do something with that? Because it's really slow for him too. |
| INDIVIDUAL A: | Right now what is at a standstill is what I told you about [marijuana sales are slow]. Those things that had the balls [describing poorer quality marijuana]. |
| VALENCIA: | Okay. |
| INDIVIDUAL A: | Uh-huh, right now I'm mostly [u/i] the other stuff. |
| VALENCIA: | Oh okay. |
| INDIVIDUAL A: | And the ones with the balls, it was 9 of them. |
| VALENCIA: | Okay. |
| INDIVIDUAL A: | One of the dream ones, do you remember the dream one? |
| VALENCIA: | Uh-huh. |
| INDIVIDUAL A: | The blue dream ones [type of marijuana]. |
| VALENCIA: | Uh-huh. |

*    *    *

| | |
|---|---|
| VALENCIA: | Tell him to get on the ball and to get working [sell marijuana] so we can make what we can so I can make something so I can buy the car and all that and get something... I just want to send OG and diesel, I mean OG and Gorilla [VALENCIA wants to send specific types of marijuana to INDIVIDUAL A hidden in a car]. |

35.    On or about May 10, 2017, at approximately 10:00 p.m., VALENCIA,

who was using Valencia Phone 1, had a conversation with INDIVIDUAL A, who was

using Target Phone 3. In the conversation, they discussed depositing drug proceeds into another bank account:

> VALENCIA: No, it's fine. And how much [drug proceeds] do you have right now, more or less?
>
> INDIVIDUAL A: I think about three or four [$3000 or $4000], sir.
>
> VALENCIA: Oh. Unless...
>
> INDIVIDUAL A: Aside from [u/i]
>
> VALENCIA: I can give you a number [bank account number] on Friday... See what you do until Friday, and then your wife could put it [deposit the proceeds] on Friday or Saturday on the eagle one [Bank of America account].
>
> INDIVIDUAL A: Alright.
>
> VALENCIA: If she could do us the favor.

36.    On or about May 11, 2017, at approximately 9:51 a.m., VALENCIA, who was using Valencia Phone 1, had a conversation with INDIVIDUAL A, who was using Target Phone 3. In the conversation, VALENCIA discussed his future plans to provide INDIVIDUAL A with additional marijuana:

> INDIVIDUAL A: I want to check to see how we are doing with the best stuff, right? Because like I said we are moving the other stuff [selling marijuana] little by little. We are going to push it out. I was going to ask you. Are you planning to make another trip [send INDIVIDUAL A another shipment of marijuana] or... Are you going to do it before then?
>
> VALENCIA: I'm looking for the ride [a car to hide marijuana in] right now. I can't find a good ride. So then, that's what I was doing, because I want to visit you [send another shipment of marijuana] before I start working around the clock.
>
> INDIVIDUAL A: Uh-huh.
>
> VALENCIA: That's why I want you to give it your best shot [sell marijuana] this week, so I can arrange that.

INDIVIDUAL A:     All right. Yeah, sounds good. Yeah, because the guys here [INDIVIDUAL A's marijuana sellers] are going to give me more... I mean, the ones who are done with their stuff [sold out of marijuana] they're asking when there'll be more new stuff [when INDIVIDUAL A will receive a new shipment of marijuana] and I've told them to wait a bit, because I was going to have a talk.

VALENCIA:     Yeah, because I want to send to you nothing but the monkey kind and the OG [two types of marijuana].

INDIVIDUAL A:     Uh-huh.

VALENCIA:     That's what I want to do.

37.     On or about May 12, 2017, at approximately 7:26 p.m., VALENCIA, who was using Valencia Phone 1, had a conversation with INDIVIDUAL A, who was using Target Phone 3. In the conversation, INDIVIDUAL A told VALENCIA that he would send his wife to deposit the proceeds on the following day:

INDIVIDUAL A:     I'll put my best foot forward [deposit the money] tomorrow.

VALENCIA:     Like I had said, if it's at the little eagle [Bank of America], your wife or anyone can go, it's really close by.

INDIVIDUAL A:     It's right here. When I saw that it said "the eagle" [Bank of America] I thought, oh, that's fucking awesome.

VALENCIA:     Well, that's good. If you pick up anything else in the afternoon, you can just drop it [deposit the proceeds] there tomorrow.

38.     On or about May 13, 2017, at approximately 6:54 p.m., VALENCIA, who was using Valencia Phone 1, had a conversation with INDIVIDUAL A, who was using Target Phone 3. In the conversation, INDIVIDUAL A told VALENCIA that his wife was not able to deposit the proceeds, and they discussed their plans to distribute additional quantities of marijuana:

21

INDIVIDUAL A:      Yeah, like I was telling you, my wife was busy and then I was busy at fucking work. There were some [u/i] where the parts were defective, and they want them for Monday and we had to get them repaired. And on to do the same thing tomorrow. I didn't get a chance to call her and ask, "Hey, did you do that?" and so I forgot to call her. . . .

VALENCIA:          Okay, that's fine. In the meantime, I'm going to work hard at this other thing [future shipment of marijuana]. I'm going to grab some other types of stuff [marijuana] as well to put that in and I'll give you a call.

INDIVIDUAL A:      Have you seen what I had told you about? The Durban [Durban Poison, a strain of marijuana]?

VALENCIA:          Send it to me just how it's written, in a message. So I can ask around over here.

39.    On or about May 15, 2017, at approximately 1:31 p.m., VALENCIA, who was using Valencia Phone 1, had a conversation with INDIVIDUAL A, who was using Target Phone 3. In the conversation, INDIVIDUAL A confirmed that he would be depositing narcotics proceeds that day:

VALENCIA:          Are you going to have time to send that to me [deposit the proceeds] today?

INDIVIDUAL A:      Yes. In a while. I'll send it once it's a little later. Don't worry about that.

VALENCIA:          About how much are you going to [deposit]?

INDIVIDUAL A:      If this guy comes by [if one of INDIVIDUAL A's narcotics associates pays INDIVIDUAL A] I'll see if it's about 5 or 6 [$5000 or $6000].

VALENCIA:          Alright.

INDIVIDUAL A:      He said it would be by today. I'll send you what I have, I think it's about 4 [$4000].

40.    On or about May 16, 2017, at approximately 9:26 a.m., VALENCIA, who was using Valencia Phone 1, had a conversation with INDIVIDUAL A, who was using

Target Phone 3. In the conversation, VALENCIA provided INDIVIDUAL with new bank account information:

> VALENCIA:        [xx]8997 [Individual E] little horse [Wells Fargo]
>
> INDIVIDUAL A:    Ok. I'll head out right now.

41.    On or about May 16, 2017, at approximately 9:56 a.m., VALENCIA, who was using Valencia Phone 1, had a conversation with INDIVIDUAL A, who was using Target Phone 3. In the conversation, INDIVIDUAL A confirmed that he deposited $3,000 in narcotics proceeds:

> INDIVIDUAL A:    It's done. Man, I deposited 3 [$3000] because my friend [INDIVIDUAL A's narcotics associate] didn't show up yesterday. But god willing I will gather more [receive more proceeds] between today and tomorrow.
>
> VALENCIA:        Thank you.

42.    Records obtained from Wells Fargo show that account number xx8997 is held in the name of Individual E at 21818 Road 20 1/2 in Chowchilla, CA. Statements indeed show a deposit of $3,000 on May 16, 2017 and a withdrawal of $2,900 on the following day.

43.    Based on law enforcement's collective training and experience, including knowledge of these and other interceptions and bank records, I believe that VALENCIA instructed INDIVIDUAL A to launder $3,000 in narcotics proceeds through the designated Wells Fargo account for withdrawal and delivery to VALENCIA in California. I further believe that based on the coded reference to the bank account (*i.e.*, "little horse" as a reference to Wells Fargo), as well as the use of a

nominee bank account that is not owned by VALENCIA, VALENCIA and Individual A intended to conceal the criminal nature of those proceeds.

### *Laundering of $2,600 of Narcotics Proceeds on May 26, 2017*

44.    On or about May 25, 2017, at approximately 10:50 a.m., VALENCIA, who was using Valencia Phone 1, had a conversation with INDIVIDUAL A, who was using Target Phone 3. In the conversation, INDIVIDUAL A asked for the bank account information:

> INDIVIDUAL A:    Send me a number of the eagle one, if you can [Bank of America account information]. So my lady can send to you some papers [deposit money] early tomorrow.

At approximately 5:45 p.m., VALENCIA responded, "[xx]5832 eagle [Bank of America] [Individual F]."

45.    On or about May 26, 2017, at approximately 12:01 p.m., VALENCIA, who was using Valencia Phone 1, had a conversation with INDIVIDUAL A, who was using Target Phone 3. In the conversation, INDIVIDUAL A confirmed that his girlfriend had $2600 in narcotics proceeds into that account: "It's done, buddy. They were 2-6 [$2600 deposited]. But they're going to collect more these few days, buddy."

46.    According to Bank of America records, account number xx5832 is held in the name of Individual F at 13792 Pepper St, Turlock, CA. Statements show that on May 26, 2017, a cash counter deposit in the amount of $2,600 was made in Chicago, and $2600 was withdrawn in California on June 19, 2017.

47.    Based on law enforcement's collective training and experience, including knowledge of these and other interceptions and bank records, I believe that

VALENCIA instructed INDIVIDUAL A to launder $2,600 in narcotics proceeds through the designated Wells Fargo account for withdrawal and delivery to VALENCIA in California. I further believe that based on the coded reference to the bank account (*i.e.*, "little horse" as a reference to Wells Fargo), as well as the use of a nominee bank account that is not owned by VALENCIA, VALENCIA and Individual A intended to conceal the criminal nature of those proceeds.

### *Laundering of $1,500 of Narcotics Proceeds on June 7, 2017*

48.    On or about June 7, 2017, at approximately 10:54 a.m., VALENCIA, who was using Valencia Phone 1, had a conversation with INDIVIDUAL A, who was using Target Phone 3. In the conversation, they discussed INDIVIDUAL A's recent deposit of $1,500 of narcotics proceeds into an unidentified bank account:

| VALENCIA: | You didn't ask me for the account number [bank account number], right? |
| INDIVIDUAL A: | No, I already sent it [deposited the money]. |
| VALENCIA: | Okay. |
| INDIVIDUAL A: | It was one and a half [$1500]. |
| VALENCIA: | That's fine, buddy. |

49.    Based on law enforcement's collective training and experience, including knowledge of these and other interceptions and bank records, and in keeping with VALENCIA and INDIVIDUAL A's pattern of money laundering, I believe that in this conversation, INDIVIDUAL A indicated to VALENCIA that he had laundered an additional $1,500 in narcotics proceeds that were ultimately destined for VALENCIA.

### *Identification of VALENCIA as the User of Valencia Phone 1*

50.     Law enforcement believes that VALENCIA is the user of Valencia Phone 1 in the intercepted conversations summarized above for several reasons:

a.      First, as discussed above in paragraphs 28-33, VALENCIA directed INDIVIDUAL A to deposit narcotics proceeds into an account owned by VALENCIA. Bank surveillance video shows that VALENCIA, whom law enforcement recognized from a known photograph, personally withdrew the $4,000 from that account on the day after the proceeds were deposited.

b.      Second, on or about June 8, 2017, during an intercepted communication over Target Phone 3, INDIVIDUAL A wished the user of Valencia Phone 1 a happy birthday. According to VALENCIA's California driver's license and bank records for the Wells Fargo account discussed above in paragraphs 28-33, VALENCIA was born on June 8.

c.      Finally, on or about March 21, 2019, a Spanish-speaking law enforcement officer who previously reviewed intercepted conversations between the user of Valencia Phone 1 and INDIVIDUAL A personally spoke to VALENCIA in Delhi, California. Based on that in-person conversation, that officer positively identified VALENCIA's voice as the voice of the user of Valencia Phone 1.

## III.   CONCLUSION

51.     Based on the above information, there is probable cause to believe that beginning no later than March 18, 2017, and continuing until June 7, 2017, in the Northern District of Illinois, Eastern Division, and elsewhere, GERMAN VALENCIA,

defendant herein, did conspire with Individual A, and with others known and unknown, to conduct a financial transaction affecting interstate commerce, which transaction involved the proceeds of a specified unlawful activity, namely, the felonious buying and selling and otherwise dealing in a controlled substance, knowing that the transaction is designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of the specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); in violation of Title 18, United States Code, Section 1956(h).


FURTHER AFFIANT SAYETH NOT.


BRANDON K. RODEKOHR
Special          Agent,          Drug          Enforcement
Administration


SUBSCRIBED AND SWORN to before me on March 22, 2019.


JEFFREY CUMMINGS
United States Magistrate Judge

27